UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ZACHARY MULHOLLAND, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) No. 1:12-cv-01502-SEB-MJD |
| MARION COUNTY ELECTION BOARD, | ) |
| | ) |
| Defendant. | ) |

**ORDER GRANTING DEFENDANT'S MOTION TO DIMISS**

This cause is before the Court on Defendant's Motion to Dismiss [Docket No. 14], filed on November 8, 2012. Plaintiff Zachary Mulholland brought this suit against Defendant Marion County Election Board ("the Election Board") alleging that the Election Board violated his constitutional rights by enforcing Indiana Code § 3-14-1-2(a)(2) and (a)(3) ("the Slating Statute") and seeking an injunction prohibiting the Election Board both from enforcing the Slating Statute against him and from subpoenaing him to a hearing before the Board to further investigate the matter. For the reasons detailed below, we GRANT Defendant's Motion to Dismiss.

**Factual Background**

On May 8, 2012, the day of the primary election in Marion County, Indiana, the Election Board issued a determination that Mr. Mulholland, a candidate for local office, had violated the Slating Statute[1] by printing and distributing a campaign advertisement

---

[1] Indiana Code § 3-14-1-2 provides:

1

containing a listing, with photographs, of a number of Democratic candidates (including himself) who were running for various offices in the election.[2] Having determined that the slating materials prepared by Mr. Mulholland violated the Slating Statute, the Board

---

(a) A person who:
- (1) prints, publishes, or distributes a slate during a primary election campaign without authority from and:
  - (A) over the name of an organization of voters, including the name of the organization and its officers; or
  - (B) if it is not an organized group of voters, over the names of at least ten (10) voters in the political subdivision in which the primary election is being held;

  together with the name of the printer who printed the slate;
- (2) prints on a slate during a primary election campaign the name or number of a candidate without the candidate's written consent; or
- (3) prints, publishes, or distributes a slate during a primary election campaign unless at least five (5) days before it is printed and published the written consent of voters over whose names it is published and the written consent of the candidates in whose behalf it is distributed are filed in the office of the county election board where the election is held;

commits a Class A misdemeanor.

(b) As used in this section, "slate" means a sample ballot, reproduction of an official ballot, or a listing of candidates:
- (1) having the names or number of more than one (1) candidate for nomination at a primary election; and
- (2) that expresses support for more than one (1) of the candidates set forth on the ballot or list.

[2] Mr. Mulholland apparently does not dispute that the election materials he submitted violated the Slating Statute. However, Mr. Mulholland argues that the Slating Statute has already been declared unconstitutional, and thus, cannot be enforced against him. In support of this contention, Mr. Mulholland relies in part on our court's decision in *Ogden v. Marendt*, 264 F. Supp. 2d 785 (S.D. Ind. 2003), in which an action was brought against the Marion County Election Board and the Indiana Election Commission in which the plaintiffs sought a declaration that the Slating Statute was unconstitutional on the grounds that it infringed the First Amendment rights of a candidate and an organization that wished to print lists of candidates that it endorsed without seeking permission from the candidates. In that case, our court granted the plaintiffs preliminary injunctive relief, finding that they had established a likelihood of success on their claim that the statute was unconstitutional. *Id.* at 795. The parties in *Ogden* eventually reached a settlement and agreed to a consent decree providing in relevant part that "I.C. § 3-14-1-2(a)(2)-(3) is declared facially unconstitutional" and that the defendants "are permanently enjoined from enforcing the provisions of I.C. § 3-14-1-2(a)(2)-(3) against Plaintiffs, their agents, campaign committees, or anyone who might print, publish or distribute copies of 'slates' prepared by one of the Plaintiffs."

authorized "both its special deputies and the Marion County Sheriff to assist the election board to enforce [the Slating Statute] by confiscating any and all materials substantially similar to the attached slate and returning the same to the Election Board." Compl. Exh. 2.

On May 30, 2012, almost five months before the instant suit was initiated in our court, Mr. Mulholland and his campaign committee filed suit in Marion Circuit Court to challenge the Election Board's May 8 Order and the seizure of his materials, and to seek an injunction prohibiting the Board from enforcing the Slating Statute. *See Zach Mulholland, Hoosiers for Zachary Mulholland v. Marion County Election Board*, Cause No. 49D03-1205-PL-21680. Although filed in Marion Circuit Court, Mr. Mulholland's state court lawsuit currently pends in Marion Superior Court. On July 3, 2012, Mr. Mulholland filed a motion for partial summary judgment in that action, which, to our knowledge, has not yet been ruled upon because of a stay issued by the state court on October 29, 2012.

On September 13, 2012, the Election Board issued an order scheduling a hearing for December 5, 2012 to hear from all interested persons, including Mr. Mulholland, concerning its May 8th order. The Board's September 13th Order provided that "[s]taff or counsel for the Marion County Election Board shall be and is hereby directed to issue subpoenas to Zach Mulholland" concerning the May 8 election materials he submitted and "any other matters relating to the applicable election laws." Compl. Exh. 3. As noted above, the state court lawsuit was ordered stayed on October 29, 2012 pending further proceedings before the Election Board.

3

Mr. Mulholland filed the instant lawsuit in our court on October 16, 2012, advancing a parallel request for relief to that requested in his state court lawsuit and additionally requesting that our court enjoin the Election Board from subpoenaing him to the December 5 hearing and from taking "any adverse actions" against him based on alleged violations of Indiana Code §§ 3-4-1-2(a)(2) and (a)(3).  The Election Board filed the motion to dismiss now before us on November 8, 2012, arguing that Mr. Mulholland's federal lawsuit should be dismissed based on the abstention doctrine set forth by the Supreme Court in *Younger v. Harris*, 401 U.S. 37 (1971).  A few weeks after filing its motion to dismiss, the Election Board voluntarily agreed to postpone the December 5 hearing.  These stop orders in the state court case have thus brought it to a complete halt.

## **Legal Analysis**

The Election Board argues that this case should be dismissed pursuant to the *Younger* abstention doctrine under which "federal courts must abstain from taking jurisdiction over federal constitutional claims that may interfere with ongoing state proceedings." *Gakuba v. O'Brien*, 711 F.3d 751, 753 (7th Cir. 2013) (citing *SKS & Assocs., Inc. v. Dart*, 619 F.3d 674, 677 (7th Cir. 2010)).  The prototypical *Younger* case "requires federal courts to abstain when a criminal defendant seeks a federal injunction to block his state court prosecution on federal constitutional grounds." *SKS & Assocs.*, 619 F.3d at 678 (citing *Younger*, 401 U.S. at 53-54).  The *Younger* doctrine has been extended

in limited circumstances to civil proceedings,[3] but only to federal suits "filed by a party that is the target of state court or administrative proceedings in which the state's interests are so important that exercise of federal judicial power over those proceedings would disregard the comity between the states and federal government." *Id.* (citations omitted).

When the state proceeding is civil, federal courts are required "to abstain from enjoining ongoing state proceedings that are (1) judicial in nature, (2) implicate important state interests, and (3) offer an adequate opportunity for review of constitutional claims, (4) so long as no extraordinary circumstances—like bias or harassment—exist which auger against abstention." *Majors v. Engelbrecht*, 149 F.3d 709, 711 (7th Cir. 1998) (citing *Middlesex County Ethics Comm. v. Garden State Bar Assoc.*, 457 U.S. 423, 429 (1982)). It is clear that "the quasi-criminal prosecution of the violation of an ordinance … is an adequate state proceeding for the purposes of *Younger*…." *Forty One News, Inc. v. County of Lake*, 491 F.3d 662, 666 (7th Cir. 2007) (citations omitted).

Mr. Mulholland's request that this Court enjoin the Election Board from subpoenaing him to testify at an administrative hearing and from taking "any adverse action" against him for his alleged violation of the Slating Statute interferes with both the state administrative hearing as well as the state court lawsuit, both of which are judicial in nature.[4] Indiana law empowers the Election Board to subpoena witnesses to its hearing,

---

[3] The Supreme Court extended the *Younger* doctrine in *Ohio Civil Rights Commission v. Dayton Christian Schools, Inc.* to include quasi-judicial administrative proceedings because the same state rights issues recognized in *Younger* were implicated. 477 U.S. 619, 628 (1986).

[4] As noted above, the Election Board agreed to postpone the December 5, 2012 hearing after Mr. Mulholland filed his federal lawsuit, but there has been no indication that the Board no longer intends to hold the hearing on a date after the resolution of the instant motion to dismiss.

which is held pursuant to Indiana law.[5]  As the Election Board argues, if the federal court were to step in and determine which witnesses the Board could call at the investigatory hearing, such action would clearly interfere with the ongoing state administrative proceedings.  Because such a determination directly affects what evidence and information the Election Board and ultimately the state court is able to consider, Mr. Mulholland essentially is asking the federal court to manage and oversee the state's administrative and judicial enforcement proceedings.

Mr. Mulholland's arguments to the contrary are unavailing.  He relies heavily on the Seventh Circuit's decision in *Nader v. Keith*, 385 F.3d 729 (7th Cir. 2004), in which the court held that *Younger* abstention was not applicable because the plaintiff in the federal suit was "not accused of having violated any state law, and the state ha[d] not instituted any proceedings against him; he merely [was] pursuing parallel remedies" in his state and federal suits.  *Id.* at 732.  Such is not the case here, however.  Mr. Mulholland *is* alleged to have violated a state statute, to wit, the Slating Statute, and the Election Board's May 8 Order constitutes an enforcement action, which in turn precipitated Mulholland's state court lawsuit.  Mr. Mulholland seeks to have our court enjoin the Election Board's subpoena powers as well as prevent the Board from taking

---

Accordingly, the hearing is still pending for purposes of the *Younger* inquiry.  Similarly, although the state court lawsuit is currently stayed, "state proceedings are 'ongoing' for *Younger* abstention purposes, notwithstanding the state court's stay of proceedings," *Addiction Specialists, Inc. v. Twp. of Hampton*, 411 F.3d 399, 408 (3d Cir. 2005), because the state proceedings were pending at the time Mr. Mulholland filed his initial complaint in federal court.
[5] The Election Board has the statutory authority to "subpoena persons and papers and compel the witnesses to answer under oath any questions that properly come before the board."  IND. CODE § 3-6-5-27.  Indiana law also requires the Election Board to make an investigation if there is a substantial reason to believe an election law violation has occurred.  IND. CODE § 3-6-5-31.

"any adverse actions" against Mulholland, presumably including the enforcement or defense of the Slating Statute as it applies to him. Thus, contrary to Mr. Mulholland's characterization of the situation, his federal lawsuit is not simply a parallel proceeding with his state court lawsuit.

The injunction Mr. Mulholland seeks, if granted, would completely undermine the ongoing state administrative and judicial proceedings, thereby creating a federal alternative to the jurisdiction of the Indiana state courts to oversee the state's administrative process. *Cf. Majors*, 149 F.3d at 713 ("[A]llowing what in effect would be a federal alternative to state appellate process would, besides disrupting and duplicating an ongoing proceeding, cast doubt on the ability of state appellate courts to oversee their trial courts.") (citing *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 598 (1975)). In short, Mr. Mulholland's federal lawsuit seeks to have this federal court tell the state court how to supervise the state administrative body and its administrative processes. The Seventh Circuit Court of Appeals has recognized that this type of federal oversight "implicates the principles of equity, comity, and federalism that are the foundation for *Younger* abstention." *SKS Assocs.*, 619 F.3d at 677-79.

Mr. Mulholland also contends that, even if the Election Board can show that his federal lawsuit would improperly interfere with a state proceeding, it has failed to establish that the state action "implicate[s] important state interests." *Schall v. Joyce*, 885 F.2d 101, 106 (7th Cir. 1989). In determining whether the important state interest requirement is met, courts must "not look narrowly to [the State's] interest in the *outcome* of the particular case …. Rather, what we look to is the importance of the generic

proceedings to the State." *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 365 (1989) (emphasis in original). Thus, "[i]n *Younger*, for example, [the Supreme Court] did not consult California's interest in prohibiting John Harris from distributing handbills, but rather its interest in carrying out the important and necessary task of enforcing its criminal laws." *Id.* (citing *Younger*, 401 U.S. at 51-52) (internal quotation marks omitted). In other words, "[t]he goal of *Younger* abstention is to avoid federal court interference with *uniquely* state interests such as preservation of these states' peculiar statutes, schemes, and procedures." *AmerisourceBergen Corp. v. Roden*, 495 F.3d 1143, 1150 (9th Cir. 2007) (emphasis in original). We regard it as beyond dispute that Indiana has an important interest in the regulation, enforcement, and adjudication of its election laws through its own administrative and judicial processes.

Finally, Mr. Mulholland argues that this case falls within the "exceptional circumstances" exception to the *Younger* doctrine. "[W]hen '(1) the state proceeding is motivated by a desire to harass or is conducted in bad faith, (2) there is an extraordinarily pressing need for immediate equitable relief, or (3) the challenged provision is flagrantly and patently violative of express constitutional prohibitions,' federal intervention in the state proceeding is appropriate." *Stroman Realty, Inc. v. Martinez*, 505 F.3d 658, 664 (7th Cir. 2007) (quoting *Jacobson v. Village of Northbrook Mun. Corp.*, 824 F.2d 567, 569-70 (7th Cir. 1987)). Mr. Mulholland argues that the Slating Statute is "flagrantly and patently" violative of the Constitution, and that creates an exceptional circumstance which renders abstention under *Younger* inappropriate.

As noted above, the constitutionality of the Slating Statute was previously addressed in a lawsuit captioned *Paul Ogden and Indiana Right to Life Political Action Committee v. Candance Marendt and others*, No. 1:03-cv-00415-JDT-TAB ("the Ogden Lawsuit"). In that case, our former colleague, Judge Tinder, granted the plaintiff's motion for a preliminary injunction to enjoin the enforcement of the Slating Statute on First Amendment grounds. *Ogden v. Marendt*, 264 F. Supp. 2d 785 (S.D. Ind. 2003). The Ogden Lawsuit was eventually resolved through a consent judgment, in which the parties stipulated that the Slating Statute was facially unconstitutional and that the Election Board was permanently enjoined from enforcing the Slating Statute *against the plaintiffs* in that case.

We disagree with Mr. Mulholland that the consent decree in the Ogden Lawsuit thereby definitively established that the Slating Statute is "flagrantly and patently violative of express constitutional prohibitions in every clause, sentence and paragraph and in whatever manner and against whomever an effort may be made to apply it." *Younger*, 401 U.S. at 53-54 (internal quotation and citation omitted). The consent decree entered into in the Ogden Lawsuit settled the issue only between the parties to that case, and nothing indicates that their agreement was intended to reach beyond that dispute and those parties. Although the consent decree indicates the parties stipulated that the Slating Statute is facially unconstitutional, the permanent injunction prohibiting its enforcement specifically referenced only the plaintiffs in the Ogden Lawsuit. Mr. Mulholland is free to raise his arguments regarding the estoppel effect of the consent decree with the state court, but we do not view that negotiated consent decree to constitute an "exceptional

9

circumstance" within the contemplation of the Supreme Court's holding in *Younger* to warrant its remaining on our docket. Accordingly, having found for the reasons detailed above that all of the *Younger* requirements have been satisfied and no exceptions to the abstention doctrine apply, we GRANT Defendant's Motion to Dismiss.

IT IS SO ORDERED.

Date:  09/11/2013

SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Distribution:

Gavin Minor Rose
ACLU OF INDIANA
grose@aclu-in.org

Kenneth J. Falk
ACLU OF INDIANA
kfalk@aclu-in.org

Alan S. Townsend
BOSE MCKINNEY & EVANS, LLP
atownsend@boselaw.com

Gregory Forrest Hahn
BOSE MCKINNEY & EVANS, LLP
ghahn@boselaw.com

Joel T. Nagle
BOSE MCKINNEY & EVANS, LLP
jnagle@boselaw.com

David M. Brooks
BROOKS KOCH & SORG
dmbrooks@bksattorneys.com